Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw nigh and give their attention, for the Court is now sitting, God save the United States, in this Honorable Court. Good morning, please be seated. Good morning, everybody. Welcome to the United States Court of Appeals for the Fourth Circuit. We have one en banc case on for hearing this morning. But before we get started, I think it appropriate to acknowledge and recognize that 24 years ago today, in New York, nearly 3,000 of our fellow citizens and others lost their lives in a tragic and terrible terrorist attack on our country, including close to, well, over 400 first responders who ran not away from the danger, but toward it. Even though it's been nearly a quarter of a century, I know that the pain of that incident continues to run deep among those who lost loved ones. And in fact, in about, I guess, three minutes or so is when the first plane hit the tower. So I think it appropriate for us to take a moment of silence and recognize those who lost their lives that day. I also want to say a few brief words about what happened yesterday. As many of you know, Charlie Kirk, the founder of Turning Point, lost his life in a tragic and senseless act of gun violence. He left behind a wife and two very young children. That same day, high school students in Colorado were critically injured, shot by a fellow student, who then turned a weapon on himself. We pray for them, and also more importantly, hope and pray that somehow this country will find a way to end the senseless violence that has seemed to have overtaken us in a way that has become almost unimaginable. So we pray for them and their families as well, and pray for a speedy recovery for the students who were critically injured in that shooting. All right. The case on for hearing this morning is 25-1411, American Federation of State, County, and Municipal Entities versus the Social Security Administration. Mr. Starcher. Thank you, Your Honors, and may it please the Court, Jack Starcher, on behalf of the United States. The District Court's decision here, granting a preliminary injunction, suffers from numerous independently fatal legal errors, and if the government is likely to succeed as to any one of those errors, the preliminary injunction cannot stand. The government is likely to succeed on all of them, on standing, on APA final reviewable agency action, and on the merits of the Privacy Act, as confirmed by the Supreme Court's decision in granting a stay in this very case. It is the government, not plaintiffs, that are likely to succeed on the merits in this case, and the preliminary injunction cannot stand. I'm happy to begin where we must, which is with standing, and I think it's helpful to just say out loud what plaintiffs' theory of injury here really boils down to. It is a challenge to access by government employees to government-operated systems maintained on government servers, and those systems happen to contain information that the government lawfully obtained and retained about plaintiffs and everyone else in this country. Plaintiffs acknowledge that 30 to 40 employees at the Social Security Administration... Mr. Starcher, sorry to interrupt you, and I don't mean to detract you from this argument, which I think is important, but I just want to ask you whether you said we begin where we must, and that is with standing, and I think that's right as a general principle, but if we were to agree with you, and I'm not suggesting that I necessarily do, but if we were to agree with you and the government that the plaintiffs in this case have failed to show irreparable harm, do we need to touch on standing? No, I think that would be an appropriate course. This is a review of the district court's decision granting a preliminary injunction. This court has jurisdiction to review it independently, and I think that's a reasonable place to turn. Again, you do you. Thank you, but I think that does underscore that everything that is in our briefing about standing and everything that I'm saying about standing, whether it comes up in questioning about standing, even if standing were a close call or you thought there might be standing, there's the additional barrier of to receive the extraordinary, uncommon form of relief of a preliminary injunction. Irreparable harm is a necessary element of that, and that is a higher burden than just the constitutional minimum necessary to get into court. Mr. Starcher, if I could ask you, and I similarly would direct this to opposing counsel. The Supreme Court reversed our decision in terms of a stay here, and it seemed unusual in the order that they entered because they didn't simply enter a stay. They provided that the stay would continue regardless of what this court does. It seems a little unusual to me. About six weeks later, in another case, Trump v. Boyle, the Supreme Court began its order in that case with the comment that even though their decisions weren't definitive at the preliminary stage, they cautioned courts to give due consideration and the equitable consideration of these cases to what the court had done. I was interested to know what impact, if any, you thought those two items had on this case. I certainly agree that it is very relevant to this case. I think, not to argue against myself here, but I think one complication is the stay order in this decision, the Supreme Court stay order, I should say, said that we were likely to succeed on the merits, but precisely because there are multiple totally independent reasons why we might be likely on the merits, and the court didn't explain which justices thought, maybe three of them thought we were going to win on standing and three on APA reviewable action. I'm not taking the position that it's strictly binding on this court. Mr. Structure, what do you do with the language in Boyle? My good colleague referenced this. It informs how we exercise discretion, but before that, in Boyle, the court says this is squarely controlled by Wilcox. That tells us, we may not know the path, but it seems to me that that tells us that the Supreme Court felt that it itself was controlled by the prior decision, and if SCOTUS is controlled, then I'm quite confident that the inferior courts are controlled. What do we do with that first line? I understand the second line is a little, maybe not perfectly clear, but the Supreme Court thought it was controlled by Wilcox, even though there were differences in the case. How do we do anything other than reach the same conclusion if we are indeed faithful to our obligations as inferior court judges? Sure, and again, I don't want to argue against myself here. I'm totally happy to get your honest take, right? Yeah, I mean, there's the complication here of I think it's how you explain, I mean, the Supreme Court didn't say which of the multiple legal issues raised here we were likely to succeed on, just that we were likely to succeed on the merits as a whole in their judgment. I think that creates a challenge. I don't— One answer to that would be to write a one-sentence opinion that says, we don't really know how or why, right? We don't have to figure that out. It might be on the merits. It might be on the equitable factors. It might be on irreparable harm. We don't know. So we know what the answer is here. The answer here is that the plaintiffs lose at the preliminary injunction stage. Now, that would have no particular bearing on the permanent injunction stage because the stay and preliminary injunction are both predictive endeavors. So the permanent injunction may well go back to the district court May after a hearing in a permanent injunction. But if we're inferior to the Supreme Court and the Supreme Court thinks it was controlled by its prior low-cost decision, I don't know how we're not controlled. I certainly agree that it is hard for me to conceive of how this court could rule in favor of plaintiffs at this stage, given that a majority of the justices thought we were likely to win on the merits of at least some of these decisions. Not just won, but did it, right? They took action, right? It's effectively a holding of the court. That's what Boyle tells us. Wilcox, which is a state decision, is a holding of the court that controls future action. Yes. Yeah, I agree with all of that. Again, that's not a position that we— So you're saying this case has been decided? I'm not saying that— So is this proceeding moot? This proceeding is certainly not moot. You know, if the state, if this court, you know, dismisses this appeal and we don't go up to the Supreme Court— But you're saying the Supreme Court's decided this? I—we have not made that argument, and I can't stand here and say that the government— The government doesn't make that argument? No, for—no. So then what do you understand Boyle to do, then? You know, you can't stipulate what the law requires, right? But what do you understand Boyle to do? If it says the Supreme Court is controlled by Wilcox, right, then what do we think that means other than if they're controlled, we're controlled? I mean, again, I don't disagree with anything you've said. I just don't want to get out of our—I mean, we said what we said in our briefs, and the government has, you know, broader interests in the space of, you know— The problem we have is the Supreme Court isn't giving us opinions. It's giving us signals, and this so-called shadow document, that document that's being put out here, we can glean and probably predict pretty accurately. If that's our job is to predict the Supreme Court and call that a win, I can tell you how we'll do it. We'll just do what the Supreme Court—we don't need this court. But you have to agree, as you answered Judge King's question, we have an independent obligation to consider the merits of this appeal. If it wanted to, it could have just told us, you don't need to do anything else. We're going to go ahead and decide it for you. So if it's decided the merits of the appeal, then it would have done that. It didn't do that. It didn't even tell us that. And that's the problem we've got is we have a Supreme Court of not criticizing the justices. I'm just saying they're using a vehicle that's there. But they're telling us nothing, and they're leaving the lower courts, the circuit courts, the district courts out in limbo as to guess what they are doing or to glean or predict what they're doing, which may be correct to do. But the truth of the matter is they could easily just give us directions on it, and we would follow it. When you don't give us clear directions, you end up with a situation where you're answering Judge Richardson's question, well, they told us what to do, and then you're answering Judge King's question, but I'm not saying they told us what to do. So that's a problem. We have an independent obligation. That's what we ought to undertake here, and we do so independently, even though some might want to predict or even you could actually predict what the Supreme Court—I don't think we should guess that. We have a job to do. That's our constitutional duty. The Supreme Court has its constitutional duty. We all should just do our job. But to append to Judge Lynch's comment, the Supreme Court in this case has already said the stay stays in place regardless. And I think another thing that the Supreme Court—to provide a little bit of assistance in sort of deciphering—the Supreme Court in this case did lay out all of the factors that the government—we had the burden before the Supreme Court of showing our likelihood of success. The Supreme Court clearly said we had carried that burden, and if you look at the briefing before the Supreme Court, I mean, it lines up one-to-one, the legal arguments made before the Supreme Court about why we were likely to succeed on the merits. So what I understand you to be saying is it may not be strictly binding, but at the very least, it sends quite a strong signal as to what the disposition of the case should be. At the very least, it's quite a strong signal, and you can go through an orange light, and you can wonder whether when you go through that orange light, you're also taking a chance that you're going through red. And surely what the Supreme Court did must mean something. Yes, and maybe that's the best place for me to land here. I agree that the Supreme Court has said its stay and shadow docket orders are binding and must be followed and must be respected by itself and lower courts. And I agree—I mean, the legal issues raised before the Supreme Court were identical to the legal issues presented in this appeal before this court. And you add those two things together— I mean, a component of the McCann and a component in a preliminary injunction ruling is a likelihood of success on the merits. And that's the primary factor above and beyond some of the secondary factors. And we have an indication from the court as to the likelihood of success on the merits. Right, and in some ways it's a stronger indication. And we have a 150 page opinion by a district judge after two months of work that we defer to and review only for abuse of discretion. So I agree— Is that correct? I agree, although of course— And we each have a commission and we have a road, and we have an oath to abide by. I certainly agree with that. On the abuse of discretion point, obviously the arguments raised in our briefing are really exclusively legal arguments. The problem is we're being asked to follow signals and signs. I mean, that's really not the way in which we like to operate up here. I mean, we're going to follow and do what the Supreme Court tells us to do, but there needs to be a clearer way of saying it. But really, I don't know if we need to go here today because we just have an independent obligation. At the end of the day, that Supreme Court is still sitting up there. Whatever we do today, I think Judge Ager is absolutely right, though. I don't think it matters. I think that stay is still in place no matter what we do today. But, Counsel, you agree that our oath and the robes we wear, they're found in our system to follow Supreme Court precedent. We are inferior judges. And just because we disagree, and this is the Supreme Court in Hutto, where they reversed our court for this very idea, and said, like, you can disagree all you want to, but consistent with your oath, you are bound to follow the law that the Supreme Court gives, even if you disagree with it. I mean, the Supreme Court could not have been clearer in Hutto when we ignored its precedent there. And I don't understand how we could ignore it here. I certainly agree that Supreme Court precedent is binding, and that's sort of one of the bedrocks of the entire judicial system we have. Is a signal precedent? Again, I guess I would go back and sort of borrow Judge Wilkinson's sort of boiling down of all that. That's what I'm alluding to. He happily put it that way. He said it's a signal. I agree. It is a signal. Counsel, why is it a signal? It may be a signal. We have the four identical issues. And true, we don't know on which one of those four issues or which several of those issues the Supreme Court state was granted. But we know that in looking at the same four issues, the result came. It may have been irreparable harm that was raised earlier. It may have been likelihood of success. But whichever one, but since those issues are the same, don't we necessarily know it was decided on one or some of those issues? Yes, I agree with that. Actually, Mr. Starcher, isn't that wrong? Because wasn't the question before the court whether the government would suffer irreparable harm from the P.I. absent a stay? And wasn't the question before Judge Hollander whether the plaintiffs would suffer irreparable harm absent a P.I.? I mean, whether that makes ultimately a difference, but that's not literally the same question, is it? Sure, I agree. I mean, I agree with that, although, of course, the plaintiff's relative injury and harm also comes up. No, I know, but the stay and the P.I. question is not literally the same question. Yes, I agree with that. And on the merits, I think. On the merits, no, but on irreparable harm, they're not the same question. That's right. We had a burden to show our independent irreparable harm. And on the merits, just again to emphasize this. Can I ask you about another potential difference as to the equities? So I think the Supreme Court would have been considering the equities de novo, right? And as Judge King said, we are reviewing for abuse of discretion the district court's assessment of the equities. Does that make a difference? I think it could hypothetically make a difference in some case. In this case, because the district court's assessment of the equities was so bound up in the legal conclusions that it reached in finding likelihood of success, I mean, it really was you have injuries here because you have meaningful weighty privacy interest, and that comes through in standing. That comes through in APA final agency action. That comes through in the merits of the Privacy Act. Counsel, why wouldn't that be included in Niken Step 1? Couldn't it be Niken Step 1 on the likelihood that the government prevailed on appeal? The argument that could have been adopted. They could have said standing, but they could have said the plaintiffs failed to show irreparable harm. The entire winter test falls first under Niken 1, and then you have Niken 2, 3, and 4. But irreparable harm, right, and the equities, right, are part of Niken 1, because the question there is the likelihood that the government prevails on appeal or whatever it is. It could be for irreparable harm that the plaintiffs failed to show. So there's additional requirements, that is, the government's irreparable harm and the equities de novo, but that is separate and comes after the entirety of winter being considered in Niken Step 1. That's right. Sorry, I'm getting a little flipped around here, but that's right. The Supreme Court could have ruled in our favor on the sole basis that even if the plaintiffs were likely to succeed on merits, we were still likely to succeed on appeal because there was no possible irreparable harm, and that would be a sufficient basis. If the question is whether we should defer to the district court under an abusive discretion standard or whether we should defer to the Supreme Court, it would seem that the hierarchical nature of the judicial system would require deference to the Supreme Court, not deference to the district court. In choosing between the two forms of deference, the deference belongs to the court above. I certainly agree with that, particularly in a case like this one where, again, the factual findings here are not a big part of this case. I mean, on all of the legal questions we've raised, there are legal issues to which the district court is not due deference in any event, so I don't disagree with any of that. Let me ask you this. You forgot where we are, and we've gone round and round in terms of what we could do here, but it's not only the precedent of the Supreme Court or a single Supreme Court. It's the precedent of the Fourth Circuit. We have an en banc court, a case like this, with a panel of candidates, American Federation case versus Bissett, took an approach that was called this statistical reasoning approach. I don't know where it came from. I'm trying to figure out where it came from, but I don't know. That's worthy of this en banc court to consider. Is that what the Fourth Circuit should be doing, the preliminary injunctions for Pence IV? It's the same kind of case. Now, as I said, the Supreme Court didn't give us an opinion. It gave us a signal at best. I agree with Judge Wilkinson on that, as well as precedent. We follow it. I mean, we're going to try to do the best we can, but ultimately in the determination of this case, I think that Bissett case, in using that statistical reasoning, changed the paradigm so much. That's huge in terms of reaching a preliminary injunction. We've got to go and do this multiplication process on it. And that's spoken to you. Isn't that knocked before us, too? It's strictly before you. Of course, if an en banc decision is saying something different or there's a pending petition for rehearing en banc in that case now, and so the court could, I think, redress that if it wanted to. I guess two responses, though, to your question about whether or not this court should be concerned about that analysis. I think, step one, the majority opinion in AFT made quite clear that that mathematical approach wasn't necessary for the court to reach the conclusion it reached in that case because on each of the distinct independently fatal problems that the plaintiffs had in that case, it was the government that was more likely to succeed. It wasn't a close call. In other words, the court didn't need to do that sort of math work to get to the result. And I think the other thing that I would say is just, you know, while the math part of it maybe seems novel and new, the basic point underlying that analysis is, I think, unquestionably right, which is because of the structure of a preliminary injunction, it is the plaintiffs who bear the high burden to show they're likely to success on the merits, and that necessarily means that when there are multiple independently fatal problems with their theory of the merits, it just gets, as a sort of baseline matter, harder and harder the more serious defects there are with their claims for them to clear that hurdle. What's the import of the recent Quisselbohr complaint that as many as 300 million or 450 million social security records have been compromised? Well, the complaint isn't that they've been compromised. SSA has uploaded them to a different system. Well, it alleges that the Doge affiliates violated the district court's TRO when it was first entered and illegally downloaded social security records to a vulnerable cloud server in the wake of the Supreme Court's stay of the district court's preliminary injunction. Right. That's the Quisselbohr allegations. Two things, at least, plus, and something about, I think, once 300 million, once I heard, or all 450 million. You know more about how many citizens or individuals are compromised than we do. So I think nothing you just said and nothing I've read and I've looked at it, I'm not an expert on it because I don't think it's directly relevant here, but just to answer your question, the Quisselbohr complaint just says that these records have been uploaded to, again, my understanding, I don't think I'm misstating this, has been uploaded to a different form of server within SSA. I call it a vulnerable cloud server. Do you dispute that? I think that's the, I don't dispute that that's the categorization, but it's a cloud server within SSA, and vulnerable just refers to a predictive likelihood by the Quisselbohr that it's more likely that some third parties outside of the government might gain access to it. There was no allegation in the Quisselbohr complaint that any third party has, in fact, gained access to any records that they're not entitled to. And on the question of whether or not. Yes, so do we have to wait until some authorized person gains access to millions of Americans' personal information, medical information, mental health information, bank information before the government thinks that the plaintiffs have standing? I mean, there are definitely facts under which you could imagine standing. What would those facts be? I mean, if you look at the facts of Bigelow, the D.C. Circuit case, the plaintiff cited that was, you know, the plaintiff was able to articulate a specific concrete harm that arose. So yes, the answer to my question is yes, the government thinks that there is not standing until and when someone gains access to millions of Americans' and children's personal information. The government thinks we need to wait for somebody to hack into that unsecure server. I think yes, I think that's the. Yes? Okay, good to know. I mean, this is a case that presents a single theory of standing, and a single theory of standing is. You said yes, that's all I needed to know. And I'll build out that, yes, a little bit. Thank you. Assuming that the only tort alleged is the same tort of common law inclusion or intrusion upon seclusion for all of the reasons given in our briefing and for all of the reasons, you know, chief among them, that the receipt expressly says that until internal review of records in an agency is not. Which is a sort of invasion of privacy, and you're talking about 300 million. Let's take that number. That's the ones that are being used right now. American citizens or non-citizens even. Yeah. Records of 300 million are on this vulnerable crowd server, according to this whistleblower. And so just to give another sort of angle to this answer, I mean, this is black letter standing law that, you know, in order to establish standing based on that theory, you have to be able to show that the kind of harm you're talking about is sufficiently clear, imminent, likely, certain to occur. And as I take the basic thrust, I know I'll finish this and then I know I'm out of time. You know, any theory that putting something on a server or giving access to additional employees to a server creates some marginal additional risk, that some third-party actor will come in and gain access to that. I mean, that's speculative in multiple ways, and the district court didn't even find that. Mr. Archer, can I ask you this? Was there evidence of an illicit distribution or publication of any of these records? That's right. There's no evidence that any third party has gained access to this information. What if there were evidence or what if evidence appears that there's been some kind of illicit distribution or illicit publication of these very private records? If there was evidence... If we have evidence of that, this would be a different case? I certainly agree with that. I think it would be a different case from the intrusion upon seclusion analog. So your position hinges on the fact that there has been no distribution, illicit distribution, or illicit publication. But if evidence develops that either of those things is no longer true, and there has been illicit publication or distribution, then we would have a different case. Yes, that is certainly true. Okay. Mr. Archer, could I ask you a standing question that doesn't involve the possibility that something might happen? And I understand your argument on that. This is about the theory that what's happened so far doesn't create standing. So let me give you this hypo. So imagine that a psychiatrist asks her patient to keep a journal. So the psychiatrist says, please keep a journal in which you record all of your deepest, darkest thoughts, fears, hopes, dreams, confessions of bad things you've done. And the patient gives it to the psychiatrist. And they do. They voluntarily give it to the psychiatrist. And then the psychiatrist gives it to a janitor who works for the psychiatrist. And let's posit that that has no conceivable legitimate medical basis to do that. Do you think the plaintiff doesn't have standing then for the psychiatrist sharing her private journal with the janitor, even though the patient voluntarily gave the journal to the psychiatrist? Well, to make the analogy to this, the janitor then doesn't look at it. No, no. Well, the janitor just reads it and gets a lot of, you know. And the patient says, I'm comfortable with my psychiatrist having access to this information. I am not comfortable having a janitor who works for my psychiatrist reading my journal. There are duties that medical professionals have to their patients. Do you think there is no standing in that situation? I think under the theory, the intrusion upon seclusion theory, I do not see how that is an analog to any case. So what's the theory under which that plaintiff does have standing other than intrusion on seclusion theory? I can't speculate. I imagine. So your position is you can't identify a basis in which that plaintiff would have standing. I mean, I can't litigate a hypothetical case on behalf of a hypothetical case. If that's a hypothetical case that strikes me as an awful lot like this case, which is why I asked. Well, I guess I disagree with that. The short answer is I imagine there's some sort of. Well, I know you think it's different, but you think it's different because you don't think that these other people are the janitor. But that's confusing standing in the merits. I disagree with that. I mean, the merits of plaintiff's claims, if you get down to them and look at what the allegations actually are, it's not that these people have no legitimate basis and are doing something totally invalid. If you look at the district court's analysis of the Privacy Act merits, it's, well, I think you could have done your job with anonymized data. But again, that's jumping to the merits in response to a standing question. No, the reason I'm jumping to the merits is to point out that the merits of this case are nothing analogous to a totally. You know, another useful example to point to is the first statement example of, you know, the example that the restatement gives is looking at someone's private records, when that could be an intrusion upon seclusion. And restatement example four says that, you know, someone forges a court order and then uses the forged court order to trick someone's bank into giving that person access to a person's individual private bank account. Yeah, that's an intrusion upon seclusion because that's a shocking, highly offensive, objectionable, intentional, targeted intrusion upon seclusion. Mr. Starcher, can I follow up on that? So I think I read in one of these cases, it may have been a district court decision, that's somewhat related to this hypothetical that the difference there is that the janitors, like a newspaper reporter, for example, has no incentive or obligation to keep the information private. So that's the concern that elevates this above the case of these workers, and perhaps the plaintiffs in this case equate the DOJ workers to janitors, I don't know. But let me ask you this. So a lot of time has passed since this lawsuit was filed, and one of the concerns that the plaintiffs had with respect to standing was that many, if not most, of these DOJ workers had not yet been vetted, certified, trained, et cetera. But I would imagine that in the eight-plus months that the lawsuit has been in play now, that most, if not all, of those things have been satisfied. What's your position on that? I mean, that's correct, and that was largely correct by the time the PI issued. I mean, JA 123 discusses this, that even back during, I think this was TRO briefing, maybe it was PI briefing, all of the SGEs and detailees by that time had completed all of their required privacy and ethics trainings and had signed acknowledgments of privacy and information security training that, among other things, laid out for those employees that they had serious obligations under federal law as government employees to safeguard private information they had access to, including, as noted in our brief, potential criminal penalties under the Privacy Act if someone willfully or knowingly gains access to private information and then shares that in a way that's not permitted. Sorry, Mr. Storcher, I think your time has elapsed. I have one clarification. I asked you about the statistical reasoning approach that the majority of you took. You gave a very thoughtful answer, but I want to be clear, that's what your answer was. If I understand you correctly, you're not proposing that we adopt that standard in reaching the merit of this case? I don't think it's necessary. I agree with the majority that it wasn't necessary in that case, and so, no, we're not. Again, I fully agree with the bottom line proposition underlying that. We know of court that we know of has adopted that approach. Can you name another one? No, I can't. And, again, I'm not taking a position on the math piece of it. Thank you. Thank you very much. Swift. Good morning, Your Honors, and may it please the Court. The crux of this case and the crux of plaintiff's position is that the government cannot grant itself an all-access pass Can you keep your voice up a little bit? Sure, I'm sorry. Thank you. The government cannot grant itself an all-access pass to confidential, sensitive information merely by baldly asserting the word need or even the word fraud. And that is especially true where the agency in question has a longstanding practice and policy, including written procedures, that explain why that kind of need is not necessary to accomplish the very goals that are being proffered. Ms. Swift, before you get to the nuts and bolts of this case, if you don't mind, could you start with this more global issue of, what are we doing here? It sounds like some of my colleagues think that there's no work to be done, that we're done because the Supreme Court has told us what the answer is. So I imagine you have a different view of that, so tell me what that is. I do. If the Supreme Court had wanted to render a final decision here, it could have done that. It could have granted cert before judgment. It could have decided the case. But instead, it stayed the TI pending this court's review and a possible subsequent cert petition. And in doing so, it acknowledged that this court will consider and decide the issues the way that it thinks is right. The stay will remain in place. That's correct, Your Honor. And my understanding is that it is not unusual for the Supreme Court to provide that a stay will remain in place regardless of a circuit court action, which is, of course, exactly what the court did here. That's all helpful. The court could have done more. This is the argument that the concurrent opinion in Boyle made. And the Supreme Court should do better. They're not doing their jobs. I understand the complaint. But in Boyle, the Supreme Court comes back and rejects the concurrence's argument and says, no, this is squarely controlled by our opinion in Wilcox. And so it resolves it. And it instructs how we're supposed to do that. And maybe we think controlled in that context means something other than strictly squarely controlled. But what do you have us do with Boyle? Do you suggest we cite Justice Jackson's defense and talk about how persuasive it is? Is that the ground on which you would have us distinguish Boyle? Absolutely not, Your Honor. Boyle and Wilcox and the Supreme Court's discussion of them are certainly in the same universe of what we're discussing here, but I think we're in a very different factual circumstance. Boyle was referring back to a stay order in a different case. These cases are going to be a different factual circumstance. And what the Supreme Court does is give us a principled framework to go by. So I think that's what you have to address. If I may, Your Honor, the Supreme Court has given a principled framework for lower courts to use when they have a different case involving nearly similar questions that have been addressed by the Supreme Court in a stay order in a different case. That is not the case here. The question in Boyle was, if the prior case is indistinguishable, then it squarely controls. We have a case that by definition is indistinguishable because it is the very same case. It can initially satisfy the condition that Boyle put on it. I disagree, Your Honor. And that's because here the Supreme Court decided, as it should, in a stay posture, based on a preliminary review of the record. And if we are to adopt that reasoning, there would really be no situation in which a court of appeals would review a preliminary injunction after the Supreme Court issued a stay order. I kind of feel like that's what the Supreme Court is telling us. And I know it's just the opinion for one justice, but that is kind of what Justice Kavanaugh said, right? Like, look, we decide the interim status. While litigation is pending, we're in charge of figuring out is the thing in effect or not during that time. Everything's different once there's a final judgment. But, I mean, I have to say, I kind of read the Supreme Court as telling us, you know, stay in the same case. We are the ultimate deciders, I think he said, of the interim status of a case. How do we get around that here? If that were the case, Your Honor, it would cut against the very essence of a polite review. And I don't read Justice Gorsuch or Justice Kavanaugh to be saying that. This was only for Justice Kavanaugh. I'm thinking of a different opinion. This is Justice Kavanaugh's opinion in CASA, of course. But there's, you know, and we discussed this in our brief, that there are certainly examples where the Supreme Court itself has recited a different decision. Right, and once there's a final judgment, once the district court enters summary judgment, it's a whole different ballgame. But the interim status, whether you can get interim relief, a stay, a PI, that seems to me like a different question. What I would say here, Your Honor, is that, and I believe one of your colleagues alluded to this earlier, that there are certain, you know, there are certainly different differences to different courts at play. But Judge Hollander in the district court engaged in a detailed factual finding that this court now has before it. And there's no evidence that the Supreme Court had this court's review, certainly, but the details of... There's no evidence that they had the district court's review? You think the Supreme Court didn't have the district court's decision when they granted the stay? I don't think that the Supreme Court had this court's assessment of whether or not the district court abused its discretion, which is a question that... It did, in the denial of the stay. If it had our decision, we did not have a stay, unvolved, or the initial unvolved, we denied it, they disagreed. But both of us were looking at the district court's decision I understand that the stay and preliminary injunction factors are in many ways, you know, in many ways overlap. But they simply have to fundamentally have a difference to them. Otherwise, we simply would never have a review of the PI after a certain stay. The stay in the pen requires more. It includes everything of winter, plus more, right? So, but what that means is that winter is included, right? And it's a little circle inside the big circle. Of course, Your Honor. I do want to challenge my colleague's assertion that the Supreme Court order in this case necessarily found that plaintiffs were not likely to succeed on any of the merits. There certainly could have been questions about irreparable harm or the balance of equities. And so, I think... What you're telling us in so many words is that the Supreme Court's action and stay of Judge Hollander's decision means virtually nothing. That we can just blow past it. I mean, we're trying to do these fine distinctions and everything. But the Supreme Court's action must mean something. It doesn't do these things just for the kicks of it. And we can't just blow past it. And I am still confused as to what meaning you would ascribe to the Supreme Court's action. It must mean something. And it seems to me that when we peel away these distinctions, that you're essentially saying it means virtually nothing. And what does that do to the hierarchical nature of a judicial system? I don't think it means absolutely nothing, Your Honor. Then what does it mean? It means that the preliminary injunction will stay in place until this court is able to review it on the merits. And if a party puts that question before the Supreme Court again, then the Supreme Court can choose whether or not to review it. But again, the very hierarchical nature that you are describing relies on each court playing a role in the system. And the Supreme Court, in its order, explicitly contemplates that this court will review the question on the merits. And whether or not... And the merits haven't been resolved yet. The trial hasn't been finished. This is a preliminary injunction. There's no permit. Correct, Your Honor. There are still proceedings pending in the district court with respect to discovery and the like, depending on what happens here. Exactly, yes. There is a pending discovery order that has been staged waiting for the outcome of this court's decision in this case. That whistleblower incident indicates that there's quite a bit of discovery in the goal. I agree, Your Honor. And I did want to make a further point. Isn't that why the district court's proceeding is staged? I mean, it's a different proceeding, right? Is there a reason why it's staged? I mean, Griggs tells us that the district court can't do anything with respect to the preliminary injunction, but there's no obligation for the district court to stop until the appellate process is finished. And so the district court could well resolve the permanent injunction, but shouldn't we all, I think, acknowledge that the stay decision and the preliminary injunction decision don't control the permanent injunction decision? The question is whether it controls the interim relief, right? Yes, Your Honor, and with respect to whether or not the district court needs to say something right now, we had an over-hour-long conference with the judge about this. And what Judge Hollander expressed is that she has immense respect for this court, and given that this court is in a position to very quickly, or at least relatively quickly, give its analysis, a more detailed analysis on these issues, she felt that it was an appropriate use of judicial resources. If we were reviewing a final judgment and a final permanent injunction, that might be different. But what we are reviewing is a preliminary injunction, and what step we should take with respect to the preliminary injunction. And that was the very same case, that's the very same posture that went before the Supreme Court. The case here, the case before us, the case before the Supreme Court was a review of a preliminary injunction. And if this were a review of a permanent injunction, a different set of factors might come into play, but that's not what we have before us. What we have before us is the same question that was before the Supreme Court, what to do with review of a preliminary injunction. Of course, Your Honor. And I'm not saying that that is not relevant in any way, but the question before the Supreme Court, as the question before this Court was, was whether or not to stay the preliminary injunction pending appeal. There's a greater jurisprudential problem here in taking the approach my colleagues suggest. If the Supreme Court says, yes, grant the stay, yes, it meets the factors, and that's it, you have no reasoning. The public doesn't have a reasoning. We have no clue as to how they got there. They just said, yes, do what we say. Can we do the same thing? Why don't we just issue opinions and say, yes, we find there's a likelihood of success, and that's it. Send it back to the district court. Why do we waste time going through all of the factors, analyzing each of the facts here? And now at the merits, this question seems to be, do we just accept yes with nothing else? And the Supreme Court perfectly knew it. It said yes with nothing else, but they didn't get to the merits. And we do it all the time. We go back and reconsider cases because certain points were not considered. To ensure that this is an opportunity for the Supreme Court to do this, we go to the merits. We write an opinion that analyzes the merits, goes to the Supreme Court, and with great hope, we will get an opinion that will also follow that same reasoning and give us not only precedent and reasoning, but will give greater confidence to the public that judges don't sit up here and just give you an answer and make it look like it's on one side or the other that you didn't. They didn't do that. There's no reasoning. But we're left here to say, well, do what the Supreme Court said. Well, they just gave a statement. It gave no reasoning. Somebody ought to give a reason. Some court, some judge ought to tell the public, ought to tell the litigants in the case, here are the reasons. That's the way our system works in America. But if we're going to get to the point where we just say, well, the case is affirmed, and that's it, and we don't give any reason, we can do that. I think we can do that. We can say it's reversed. Don't give a reason. And then the district court gets it back and says, well, there's nothing here, but we told you what to do. We're going to follow what you said. That's where we are. All we are doing now is getting to the merits, giving reasons for what it is. It may come out one way, it may come the other way, but ultimately, if there's a certain gradient in it, then the Supreme Court will hopefully then have that hearing and will have the opinion that I think we should get in a case like this in which we can determine how reason and the public can understand it, the litigants can understand it, and our system will go on in a manner that it has worked for since the inception of this country. Precisely, Your Honor. And I think it is actually this court's obligation to reach the merits of this preliminary injunction. Let me ask you that. I'm confused, and I'm interested in your view on the difference between the stay and a preliminary injunction. If a court stays a preliminary injunction is an interim relief pending the merits determination. It's just while the trial is ongoing, right? Yes, Your Honor. All right. If we stay a preliminary injunction, regardless of how we decide whether the preliminary injunction is right, the Supreme Court stays it, doesn't that render whatever we do inapplicable? I mean, if we were to say the preliminary injunction was appropriate, the stay would still be in place, and there would be no preliminary injunction, right? Of course, Your Honor. So what survives in view of the Supreme Court's order that the stay continues? Well, the stay does not continue indefinitely. Not indefinitely, pending the review. But we don't get to the merits. We can only consider the winter factors, which are very similar to the NICN factors. And if the Supreme Court says under the NICN factors are not satisfied and that the stay continues beyond what we're going to decide on the winter factors, what's left? If we decide the winter factors have been satisfied, the preliminary injunction still will not go into effect, right? That's correct, Your Honor, until the Supreme Court reviews the order and I have a cert petition. I just wonder what our role is in view of that order. It seems to me it's more than just giving a signal. It's a command that whatever we do, that injunction's not going to go into effect. And the injunction is only preliminary. It's only tentative. It's interim. It's temporal. And there's been no trial on the merits, and we're not reviewing the merits when we review a preliminary injunction. We review the likelihood of success as one factor. That's it. And the Supreme Court has told us regardless of what you do, Fourth Circuit, the stay remains. And so I'm just wondering what you think remains for us to do in this thing except to comply with what the Supreme Court has told us to do. If I may. Yes, of course. What remains is that there will be a decision regarding the preliminary injunction. Which will not go into effect. Which will not go into effect until the completion of the appeal of the preliminary injunction. And on the record before us, there is no reason to think that a trial on the merits will fall immediately after the appellate court's final resolution of a preliminary injunction. Well, as Judge Richardson pointed out, I think in the peculiar circumstance where an appeal of a preliminary injunction occurs, the district court can continue the case while the appellate process is going. The appeal of the preliminary injunction, I don't believe, deprives the district court of jurisdiction. So if there's a merits determination, that's different. But we're reviewing a preliminary injunction, which is a high burden, because there's been no trial. And so we review the likelihood of success along with the other factors, the winter factors, to see it's in effect. Now, the Supreme Court looked at the same thing we looked at, and they reversed us. And then sent it back to us, basically saying whatever we do on the preliminary injunction, I guess we have to rule on it to some extent. Maybe we do. But I'm just wondering what's left if we were to say the preliminary injunction was legitimate. It still stayed. And there's no preliminary injunction. It still stayed until either the Supreme Court did an assert on it or the Supreme Court resolved the issue. And I do think that that is important. John, I'd like to go back to Judge King's point about the whistleblower report, because I do think that it crystallizes what is actually at stake here. You know, that's probably on a different issue. It's worth considering. But I think the most that could be concluded is that the data were put onto another server within the agency. There has been no evidence that anything has been disclosed beyond the agency. The agency has these obligations to protect records. Now, within the agency, there is a claim that the data are on a computer that is less safe than other computers. But we have no evidence that there's been a disclosure. And, of course, TransUnion pointed out that that risk is not enough for standing. Sure, but TransUnion also grounded its analysis in the tort of public disclosure. And, of course, the tort that is at issue here is intrusion upon seclusion. I also don't think it's quite... Ms. Swift, let me ask you this, because it follows on Judge Niemeyer's question, I think. I don't understand, as a matter of litigation tactics, you can explain it to me. Why would you want us, at this particular stage, to wade into the merits? Why would that be to your advantage? I don't understand. Because the record at this point in the proceedings is simply not favorable to you. You've got the... There hasn't... The case lacks a certain ripeness. There's no evidence of abuse or distribution or publication or whatever of these records. If you go back to the district court, you can at least attempt to develop a fuller record that is going to be more favorable to your position. But you are asking us, and later on the Supreme Court, to review the merits of the case when the record could not be in a less favorable posture than it is for you right now. Because what you're asking us to do in light of the... and to blow past the Supreme Court and make a decision when there's no evidence of distribution, no evidence of publication, where we're being drawn into Social Security administration inch by inch, and we're trying to tell the executive branch what it is on this record to do and not to do with its own data. But I would think it would be a big advantage to you to have a more developed record. Because reading this record is not even close to what you could have assembled to make a strong case and particularly to get something to back up the whistleblower's report. But I don't see that there's anything that's been put through adversarial testing on that matter. Why do you want us involved in the merits? It's not going to end well for you. Respectfully, Your Honor, I do disagree. And the crux of my disagreement is that the speculative injuries that you have raised, that there's no evidence of disclosure or malfeasance or introduction of bad actors, is simply not relevant to the harm that plaintiffs allege here. And the harm that plaintiffs allege here is intrusion upon seclusion, which many courts, including this one recognized in O'Leary, is distinct from harms associated with disclosure. I don't understand why there's intrusion upon seclusion. The SSA still has the data. They have the right to have the data. It's never left the walls of the data as far as we know on this record. And it would be no different than the commissioner starting out his or her term and saying I'm going to form a compliance group and we're going to review every file of an American who's receiving benefits to determine whether the benefits are appropriate, there's no waste, there's been no change in medical condition, there's been no death, and we're going to review them all in order to save the taxpayers money. They could do that and look at each file. And it seems to me you're just arguing about whether the DOJ employees are allowed to look at it as opposed to the SSA original employees to carry out that compliance program. Absolutely not, Your Honor. We would be here whether we were talking about the DOJ team or a new team created of existing SSA employees. We're here because- You're saying that the commissioner could not establish a compliance team within the agency when the commissioner takes office and says I want to confirm as a matter of executive function, I want to confirm that the benefits we are paying are appropriately being paid. And in order to do that, I'm going to direct that my staff review every file to make sure the benefits are appropriate. Could the commissioner do that? Indeed, I think almost every social security commissioner does that. Of course, now, if the commissioner can do that, there's no disclosure by having the employees look at the files. There is no evasion of intrusion into seclusion. That is within the SSA, and that's part of the executive function. The seclusion is already broken when the public members provided data to the SSA to justify benefits. But if it stays within the SSA and there's some technical violations about whether the Privacy Act was complied with within it, it's a difficult case to say the public's hurt in the absence of disclosure or publication or harm by some public members. At this point, the whole purpose was to do exactly what my hypothetical said, is to comply with Congress's mandate to provide benefits to persons whose circumstances justify the benefits. I don't understand in the current status what the complaint is about. A number of things, Your Honor. The first is that, and I don't want us to get into a world where we are confusing a Privacy Act violation with the nature of the harm for standing. But, of course, this Court and others have recognized that Congress's views may be instructive as we analyze whether or not there is, in fact, a private sphere that we accept as a society to be protected. And so I would note, of course, that the Privacy Act is an individual employee determination. That's not in dispute. The government does not argue otherwise. By its plain language, the Privacy Act requires that every single employee who accesses personally identifying information in the form of a record has to have a need for that piece of data. I understand that. All the DOJ members now are under that. They've gone through that process and they've signed off. That might be a factual question, whether everybody's completed that. But let's assume we have one person that is reviewing a file for fraud and waste, and that person's status under the Privacy Act has not yet been completed but eventually is completed. Does that give the public standing to say that person's viewing the file somehow hurt the public? If Your Honor is referring to the status under the Privacy Act as whether or not that employee has a need, what the District Court found here after a detailed review of the record, which is well described in her opinion, is that the assertions of need here are conclusory. You always agreed with me that compliance and reviewing files for compliance is a need. And in this case, the President said as a matter of policy, I am creating DOJ to create accurate data, efficiency, and eliminate waste. And DOJ goes in and says we're looking at the files to discover fraud, waste, and abuse. And it seems to me that is the need. That's an executive direction in order to make sure the executive functions carried out that we're paying benefits in the way Congress mandated they be paid. Need does not exist in a vacuum, Your Honor, whether for purposes of the Privacy Act or otherwise. The need must be tethered to the scope of access that is requested. And here, as the District Court found, and it's very clear from the record, there is simply no relationship. Counsel, can I ask a question different than this? A little bit ago, you, I think, wanted to talk about the whistleblower information. And I'm trying to understand how that relates to our decision today. Are you saying that a report or a complaint or something about the whistleblower information as a matter of law of the record we look at has a bearing on what we did? I'm not, Your Honor. Obviously, the whistleblower report is more recent. The reason that I raised it in response to Judge King is that I think there is some misunderstanding about what the whistleblower report actually said. It is not simply that there is data in a less secure environment. But if that led to some discovery in this case, you could bring a renewed preliminary injunction. That would be new evidence, and we could look at that. But that's not before us right now, correct? The whistleblower report is not before us right now. What is before us is plenty of evidence that supports what the whistleblower said, which is in the record, which is that DOJ has not only put this information in a slightly less secure environment, but it has excluded everyone else at Social Security from being able to monitor its usage, who accesses it, whether or not it is reported. And so, in this universe, DOJ is not acting to service SSA interests. Ms. Swift, can I ask you about irreparable harm? Yes, please. Could you please articulate as clearly as you can for me what is the plaintiff's theory of the irreparable harm that they will suffer in the absence of a preliminary injunction, given everything about the world, including the fact that the Supreme Court has said that this PI will be stayed in lesson until the Supreme Court resolves this case? What is the irreparable harm that is being prevented by this PI? The irreparable harm that would be prevented by the PI is the harm that our clients experience every day, and perhaps exponentially every day, that their sphere of privacy is invaded by folks who do not have a need for the personal information that they are seeking, and who plainly do not meet any of the strong strictures that SSA has for decades put in place. I want to make sure I understand. The theory of irreparable harm is not the possibility it might get out. The theory of irreparable harm is that the access is the irreparable harm. Exactly, Your Honor. And that is supported both by common law understandings of the tort of intrusion. How do I square that with what several judges on the DDC said? I would point you to a more recent opinion from the D.C. Circuit, Judge Millett, who discussed intrusion upon seclusion in a similar context. But I'm not talking about standing. I'm talking about irreparable harm. For irreparable harm, I would direct the court to the Church of Scientology case from the Supreme Court, which makes clear that harm continues as long as improper access continues. But isn't Scientology mostly a case about mootness, Article III mootness? It is, but it also discusses the fact that as long as there is improper access, there is harm on an ongoing basis. Now, the District Court's initial TRO and preliminary injunction sought to address this by not only returning to the status quo, well, by returning to the status quo, including by requiring SSA to make sure that any data improperly accessed was disforged and deleted. I don't think there is any universe, given the Supreme Court's day, where we can remedy at this point all of the harm that plaintiff members have been subject to and will be continued to be subject to. Well, an injunction can never remedy harm that's already happened, right? That's Lyons and a whole series of other cases. Of course, but the issue is that the harm is continuing, and the fact that they have already been harmed does not mean that they... I don't understand what you say. So they looked at a file yesterday, and they continue to do it today, and there's additional harm today? This is an abstraction, isn't it? I mean, what do we talk about as harm? I mean, you're sort of using a formula from common law, that harm, but there's got to be something that affects the person. So somebody's looking at a file yesterday and continues to look at the file today to determine whether it's in compliance and puts it back in the file drawer. And you say the harm today is additional harm from yesterday? Well, they haven't put it back in the file drawer because they maintain... Well, then they put it back tomorrow. But, I mean, the question is... But they're not... It's the same harm, isn't it? I disagree, Your Honor. First of all, under the CFR, under traditional standings of intrusion... I'd just like to know, in real world common sense, harm means something. It means something adverse against a person. It has to affect them negatively. And the question is, their file is sitting there on a desk and it continues for three days while a person is looking at it, and that person hasn't yet gotten his authorization. It's coming next week. And you say that public member is harmed additionally each day? If I may offer an analogy. The same types of information that are given to SSA are often given, for example, to banks or to hospitals. Let's take a hospital example. Of course, they have incredible amounts of sensitive information. And here I'll stop to note that the medical information that SSA maintains includes information that may carry a lot of stigma, that is certainly very personal, including HIV test results, STD test results, what the nature of a person's disability is. So we're at a hospital that has potentially similar types of information and let's say there's a janitor who has access to hospital data. The janitor is a disclosure. It's beyond the walls of the medical privilege. The doctors in the hospital have to keep it internally. When they produce it to a janitor, they're violating. Here it stays within the walls of SSA. The data stays, it's looked at by employees who either are or potentially are authorized to look, and it's a matter of compliance. They're determining whether the data they have supports benefits. And there's no evidence yet that this has gone beyond the walls of the Social Security Administration. These documents have already left the individual's security. Each person has provided directly or indirectly these data to the SSA. They have, and I'm glad you raised that, because defendants argue that there is some sort of voluntariness in giving that data that makes it impossible for these plaintiffs to get relief. First of all, virtually every child born in America today received a Social Security number at some point soon after birth. But your basic position is that the harm lies in the access, notwithstanding the fact that there has been no evidence that the access has been abused. Now, all I'm suggesting to you is to say that harm lies from access without any evidence of abuse of the access. That is a very difficult position, and I would suggest that your case could be immensely strengthened on remand or whenever else. You could actually point to something tangible in terms of the fact that the access has in some way been abused or that the records have in some way been compromised. I don't think you can do it on this record, and you're going up to the Supreme Court in a very difficult position, and I would suggest to you that your case and your contentions would be immeasurably strengthened if you could develop on remand or whenever some concrete plausible evidence that there has been an abuse of access in the form of a violation of the Privacy Act or in the violation of the Social Security Act. And I think that's very difficult to establish because the need here that the government asserts is simply the elimination of abuse and fraud in a system which is facing very perilous financial conditions in the future. We all know that the Social Security Trust Fund is, if the actuarial tables are correct, is going to be high and dry in the future. It's going to run out of money. And one of the things that you can do to avoid, to lessen the pain of that and the excruciating choices of cutting benefits and raising taxes on younger workers is to make sure that those who receive Social Security benefits are in fact eligible to do so, that they're not deceased or that they're not submitting fraudulent information or whatever. Down the road, this program is going to be in trouble unless the benefits are confined to those who legitimately and importantly deserve them. It's a very popular program. But I'm saying that your case could be so much stronger if you don't go up on the theory that harm lies in the access to the slightest evidence of abuse. That is the least favorable posture for you. Your Honor, I, if given the opportunity, would hope to make arguments about both that harm and potentially other harms, if we get to them, at a later stage in this case. But the Supreme Court has been very clear that intrusion upon seclusion, which does not require disclosure or some other additional harm, is impermissible and is actionable in these courts. And I do want to go back because I think it's a very important point. I'm not sure that there is much dispute in the record that defendants have violated the Privacy Act and that the District Court explains why in great detail. But going up there on this tort, the intrusion upon seclusion tort, it runs into such separation of powers concerns about whether the judiciary, by invoking a rather rarely used action in tort law, can direct the executive branch how it is to manage its internal data. And if you can prove it is a violation of an act of Congress, that's so much stronger than going up there with all the separation of powers concerns it involves of some tort action. The tort action runs into huge separation of powers questions that a violation of the Privacy Act or the Social Security Act would not. You don't have those same problems that you do with this tort. Your Honor, I fear that we may be conflating the standing question with the questions of the claims themselves. And for standing purposes, this court has to accept that plaintiffs are right on the merits, that there is a Privacy Act violation. And if we accept that for the standing inquiry, as we must, then of course... I thought you would have to show imminent concrete injury in such a circumstance. I'm trying to remember how TransUnion handled this. And they, of course, referred to that tort. But they did require some concrete injury that is imminent, don't they? They do. And I don't see how just pure access without concrete injury satisfies that. So you would have to show, and maybe you could show, that there is imminent injury, concrete injury to follow. But at this point, the record is blank on that. We haven't gotten into that, I guess. Well, we certainly believe there is concrete injury of a different type to follow. But I'd like to point the court to some of its sister circuits, which have dealt with similar issues. And, Swift, I'm going to ask you to wrap it up very quickly because you're 12 minutes over your time. And that really wasn't a question, so I don't think you need to respond to that. Okay. Thank you, Your Honors. I'm sorry, but I just have a clarifying question. In response to Judge Niemeyer's questioning earlier, you started to try to explain what you termed what's actually at stake here. And so I, at least, would like to hear your full answer in your summation about what is actually at stake here. I think defendants make a lot of the fact that we are talking about data in an electronic system. And I will note that Congress passed the Privacy Act explicitly in response to concerns about government actors misusing information to satisfy curiosity and how much easier that is in an environment where all of that data is stored electronically. Here, the data that is stored electronically is not simply a series of ones and zeros. It is the most sensitive information about people's lives. As I mentioned before, it is detailed information about not only their medical conditions, but perhaps their child's medical conditions. It is detailed information about their child custody dispute and which agencies are or are not involved in that. That's the essence of the problem here. My colleagues who so eloquently pointed out the problems with Social Security. The problems here is where the average American sits, and that is information technology. We already know that data breaches. This information is highly sensitive. You, any president in the future, and that's the value of going to the merits. If the Supreme Court wants it to be the case, it can't just be for this case. It will be for every case in the future. They cannot get amnesia in the future because they didn't write an opinion on it. Write an opinion and tell us that all a president has to do is send a bunch of people in and call them employees, give them a truncated education on a system that has been in place to try to protect your data for years and years and let them see it and then wait for the yet. That the evidence is not there yet. Do we have to wait for the yet for the millions and all of the citizens of this country to be able to stop this kind of intrusion on their information and go through their normal process of doing so? That's the question we have here. We're not dealing with people who've been around the Social Security. Social Security didn't just start yesterday, but the people who went in did just start, and they had an internal system in there of how you could do it. The military has the same thing. You don't just go in there. People think the top secret is the top secret. That's not top secret. You go here. How do you get access there? Two different systems, but nonetheless, the concerns are the same. From our perspective, it's the ordinary citizen, powerless in this instance to keep their information in a system that is solid, and there's no evidence that this is a solid system, to bring someone in and give them quick training and say, here, take it, and you don't know what you're doing with it, that leaves the citizen totally powerless. I agree, Your Honor, and if I may briefly... That's not a question. That's a very eloquent statement. Your time is up. Thank you, Your Honor. Mr. Starcher. Thank you, Your Honors. Three or four time-dependent quick points. First, just to clean up sort of the back and forth during my opening time, the government, to be clear, has no objection to this court entering an order that says the Supreme Court's state decision means that the preliminary injunction here cannot stand, and therefore, the preliminary injunction is vacated. If this court were inclined to issue a short order just saying that much, the government, to be clear, does not have any objection to this court doing that. The government, however, would also not object to and would be happy with a decision saying that the Supreme Court's state decision is at least a very strong indication of the government's likelihood to succeed on some or all of the legal questions presented here, and then to move on and to provide, to some of Judge Wynn's points earlier, for the benefit of lower courts, including the district court in this very case, to provide some analysis and explanation of why this court agrees with the Supreme Court's decision to grant the stay. I would posit that I think the easiest route to go there is standing. It didn't come up during my friend's time, but... On that question, what is your position on access to files being harmed? The restatement of... Simple access. Simple access internal to an organization is not enough. Every court to have considered that question has reached that conclusion, and the restatement... Plaintiffs have never offered that response to this. The restatement says that. There's a note to the restatement that says, an organization's review of its own records is, without more, not an unreasonable intrusion upon seclusion, and the reason why courts have uniformly reached that conclusion when confronted with that question is a lot of the common-sense sort of ideas that came up in questioning with the other side, that that's just... It isn't seclusion in a meaningful way. It isn't intrusion in a meaningful way. There's no harm from it. So I would posit that if this court were interested in issuing an opinion that did give some analysis as to why exactly plaintiffs are unlikely to win here, I think standing, to me, seems like maybe the cleanest route, and you can just fall in line with other courts on the restatement in saying... Do you agree that the importance of a written opinion here may put the Supreme Court in a position that if this is the way in which a president can do business, it will be the way in which future presidents can do business this way too? Create a nice little organization, insert it into one of the agencies, and since they are employees, give them everything that you can, even one of these extra days for a background check, and it's over. The most sensitive data on American citizens in the world, one little agency of people who... And when you say internal, these are not people who have been working this agency forever. They haven't even worked in there a day. They just started there. Don't even have an instance of how it works. These are data people, and they come in, and I don't know how much background check it goes. I mean, when we have vetted for judges, they go for days and months and months. When we have vetted for military officer positions, you have months and months. You're talking about the most sensitive information in the world right here for American citizens. A group of people are put together. They call it a doge or whatever, and then they stick them in there and say, give them everything you have on Social Security information on everybody there is, and you're internal, and that's good enough. That cannot be right, and if it is, it is damning to the future of our country because this doesn't just apply to this administration. It applies to every administration from here. That's why we need an opinion from the Supreme Court because we don't need a future Supreme Court coming and says, well, we didn't really say that because we didn't give any reasoning behind it. People need to understand it, and to give confidence to an opinion, we need to understand why you did it. We judges would just love to hear your reasoning as to why you ruled that way. Then it makes our job easier. We will follow the law. We will follow the Supreme Court, but we'd like to know what it is we are following. I fully agree with the value of published opinions and providing guidance and clarity to the public. I'll just say in response, many, many courts have confronted this exact standing question or something materially similar, which is, again, this idea of internal organizational review of records that the organization lawfully obtained and retained. Of course, I've uniformly said that's not an intrusion upon seclusion. I don't know if it's anything else. The Supreme Court has it. That's where we get the guidance from is the Supreme Court. That many courts, that's how you get different decisions and different circuits and different district courts. We're out here playing it. We're just in the water, thrown in the water, and we're just getting some guidance. Yeah, no disagreement there. To wrap it up, I guess that's why I think our preference would be for this court to issue an opinion that said more than just, well, the Supreme Court said what it said. We don't know what it means and the story because there is ongoing litigation in both AFT and, in this case, in district courts, and those district courts could benefit from an opinion from this court explaining. Again, standing would be enough. This is not an analog to the common law court, whatever else. That would hold. I think you are imagining a situation in which we say we're bound by what the Supreme Court did in this case, but we want to explain why we agree. It would also hold if we wanted to explain why we disagreed. Certainly, I think... That's what you're saying, pretty much. That's right. Can I ask one question? Do you think, as a version of Judge Hyden's hypothetical, imagine hypothetically that I'm a judge and that I have lots of personal information about people and all sorts of social security and black-owned cases, and imagine hypothetically that I have a janitor who comes and cleans my office, takes out the trash every day. Would a given individual litigant have a standing to sue me under the Privacy Act because I put things in the trash bin or leave files open on my desk? Is that the same question we've got with a psychiatrist, or is that different for some reason? It certainly is different for one important reason, which in that case, it seems like the wrongful conduct and the intrusion would be accomplished not by you and your handling of the records, but by the janitor reaching into it. I didn't put it in a safe. I didn't take my files and put them in a scale. Sure, and I certainly agree that that theory starts to sound a lot more like my theory here, which is really quite close in the weeds of review of the way in which the agency is or is not redacting. You would think there wouldn't be standing in that? No. I get that, but in theory, it would be the same question, and the answer is you would not have standing to sue me under the Privacy Act. I'm not sure, I guess, that the easier answer maybe is that this court has existed for a long time in the common law, and I'm aware of no cases that look anything like that that have reached decision. So, I'll end with that. Thank you, panel. Thank you, Mr. Starcher. I appreciate the, well, the court appreciates the arguments of both counsel in this quite interesting and complex case. We'll come down and greet you. I'm going to ask the clerk of court, a little bit tongue-in-cheek, maybe we can get some life vests on the way out so that we can stop drowning in this case. We'll come down and greet you and then take a break, before we move on to the rest of the cases that we're hearing today. This honorable court will take a brief recess.
judges: Diaz, Wilkinson, Niemeyer, King, Gregory, Agee, Wynn, Thacker, Harris, Richardson, Quattlebaum, Rushing, Heytens, Benjamin, Berner